UNITED STATES of America,
Plaintiff–Appellee,

v.

William Sherman RAY, Defendant–
Appellant.

No. 02–5213.

United States Court of Appeals,
Tenth Circuit.

June 7, 2004.

Dennis A. Caruso, Dennis A. Caruso, P.C., Tulsa, OK, appearing for Appellant.

Kevin C. Danielson, Assistant United States Attorney (David E. O'Meilia, United States Attorney, with him on the brief), Office of the United States Attorney, Tulsa, OK, appearing for Appellee.

Before TACHA, Chief Circuit Judge, EBEL and HARTZ, Circuit Judges.

TACHA, Chief Circuit Judge.

A jury found Defendant–Appellant William Sherman Ray guilty of numerous counts relating to possessing with intent to distribute, and conspiring to possess and distribute, narcotics. On appeal, Mr. Ray urges five grounds for us to find error below: (1) use of defective verdict forms, (2) refusal to try him separately from his codefendants, (3) admission of summary testimony and exhibits, (4) enhancement of

his sentence pursuant to U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2002) ("U.S.S.G."), and (5) enhancement of his sentence pursuant to U.S.S.G. § 3B1.1(b)(1). We take jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §§ 3742(a)(1) and (a)(2) and AFFIRM.

## I. BACKGROUND

This appeal represents the culmination of the government's investigation and prosecution of an extensive drug conspiracy. As the government proved at trial, the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona. From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma; Wichita, Kansas; and Detroit, Michigan. The government contends that Mr. Ray was a key member in the conspiracy's Tulsa branch.

A federal grand jury indicted Mr. Ray for conspiring to possess and distribute cocaine, crack cocaine, and marijuana in violation of 18 U.S.C. § 846; possessing with intent to distribute more than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); conspiring to launder money in violation of 18 U.S.C. § 1956(h); and three counts of forfeiture pursuant to 18 U.S.C. §§ 841(a)(1), 846, 982, 853, and 1956(h). After a twenty-three-day trial involving over fifty witnesses, a jury convicted Mr. Ray on all counts. The District Court subsequently granted the government's motion to dismiss one of the forfeiture counts against Mr. Ray and sentenced him concurrently to 280 and 240 months' incarceration, $5700 in fines and assessments, and five years' supervised release. Mr. Ray filed timely notice of appeal.

Mr. Ray raises five issues on appeal. He first argues that the District Court used defective verdict forms because the forms never required the jury to make a finding of guilt as to the overall conspiracy. Mr. Ray claims that the forms merely required a finding as to specific objects of the conspiracy. Mr. Ray next argues that the District Court erred in denying his motion to be tried separately from his codefendants, claiming that the joint trial could have caused the jury to attribute to Mr. Ray several of the violent acts of his alleged coconspirators. He also argues that the District Court erred in allowing Officer Harold Adair, a government witness, to present summary testimony and exhibits regarding the activities of the alleged conspiracy and the amounts of drugs for which each defendant was responsible. Finally, Mr. Ray argues that the District Court erred by enhancing his sentence under U.S.S.G. §§ 2D1.1(b)(1) and 3B1.1(b)(1). We address each of these arguments in turn.

## II. DISCUSSION

### A. *Verdict Forms*

#### 1. *Standard of Review*

■ First, Mr. Ray argues that verdict forms were defective, as they did not require the jury to make a finding of guilt as to the overall conspiracy. Codefendant Hardridge's trial counsel objected to the verdict forms in the district court. Mr. Ray's trial counsel, however, did not enter an objection or join Mr. Hardridge's counsel's objection.[1] Our general rule is to

---

1. In their initial briefs, the parties disagree about whether Mr. Ray raised the verdict-forms issue before the District Court. At oral argument, Mr. Ray's appellate counsel conceded that Mr. Ray's trial counsel did not

raise the issue at trial. On February 25, 2004, we ordered additional briefing on this issue. In that briefing, Mr. Ray's appellate counsel further conceded that "it does not appear that [trial counsel] had any agreement

review such unraised issues only for plain error pursuant to Fed.R.Crim.P. 52(b).

Mr. Ray argues that he sufficiently preserved the issue for appeal, thereby rendering plain error review inapplicable, because: (1) one of his codefendant's objected to the verdict forms, and (2) "further objections by co-counsel would have been futile." In urging this position, Mr. Ray notes that several circuits have adopted this rule. *See, e.g., United States v. Lefkowitz,* 284 F.2d 310, 313 n. 1 (2d Cir.1960) (finding that a codefendant's objection preserved an alleged instructional error for appeal for an unobjecting defendant); *United States v. Bagby,* 451 F.2d 920, 927 (9th Cir.1971) (same).

In response, the government asserts that, at the time of Mr. Ray's trial, the objection of a codefendant did not preserve an issue for appeal for all defendants. In support, the government notes that at the time of the trial, Rule 30 of the Federal Rules of Criminal Procedure read:

> No party may assign as error any portion of the charge or omission therefrom *unless that party objects thereto* before the jury retires to consider its verdict, stating distinctly the matter to which that party objection and the grounds of the objection. Fed.R.Crim.P. 30 (2002) (emphasis added).

Pointing to this text, the government argues that the objections of Mr. Ray's codefendants did not preserve the issue for Mr. Ray's appeal.[2] We agree.[3]

---

with the other Defendant's [sic] counsel that the objection of one would be an objection for all."

**2.** Effective December 1, 2002, Congress amended Rule 30 to read:

> A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

The Advisory Committee Notes to the 2002 Amendments state generally that the 2002 amendments were "intended to be stylistic only, except as noted below." Fed.R.Crim.P. 30 advisory committee's note (2002). For purposes of this appeal, we need not determine the effect of the 2002 amendments on this issue.

**3.** Our ruling today is limited specifically to the sole issue raised on this appeal (i.e., the preservation of alleged instructional error when the complaining party neither offered the instruction nor offered an individualized objection). Importantly, this is not a case in which the parties have agreed that an objection by one defendant will count as an objec-

tion for all. *See United States v. DeLuca,* 137 F.3d 24, 37 n. 14 (1st Cir.) (holding that the objection to jury instructions by a codefendant preserves the issue for appeal when defendants agreed at the onset of trial that one defendant's objection would apply for all), *cert. denied,* 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998). It also does not raise the issue of preservation with regard to evidentiary objections. *See Howard v. Gonzales,* 658 F.2d 352, 355 (5th Cir.1981) (allowing a codefendant's objection to preserve an issue because "the literal wording of Rule 103(a) does not require the objection or the offer of proof be made by the party seeking to raise the point on appeal"). Nor does it raise a pretrial motion-to-suppress-evidence issue. *See United States v. Cassity,* 631 F.2d 461, 465–66 (6th Cir.1980) (allowing a codefendant's objection to preserve a constitutional issue because the "peculiar facts and circumstances of" the case did not implicate the social policies underlying the rule requiring pretrial objection to certain issues). Finally, this is not an instance where a defendant himself requested the complained-of instructions. *See United States v. Gray,* 626 F.2d 494, 501 (5th Cir.1980) (finding that a codefendant's objection did not preserve instructional issue for appeal when the defendant offered the instruction because doing so "would be incentive for each defendant to ask for an erroneous instruction in the hope of trapping the judge").

Although some circuits have taken the opposite approach,[4] we find the approach taken by the Fifth Circuit most persuasive. *See United States v. Harris*, 104 F.3d 1465, 1471 (5th Cir.1997) ("[T]he objection of one defendant, in and of itself, does not preserve the appellate rights of other defendants."). As the government does here, the Fifth Circuit in *Harris* relied principally on the text of Fed.R.Crim.P. 30 to conclude that "the greater weight of authority counsels that a party can rely upon the objection of his codefendant only if he joins in the objection." Applying this principle, we find that Mr. Ray failed to preserve the verdict form issue and review this appeal for plain error.

■ To satisfy this standard, Mr. Ray must show that: (1) there was error; (2) the error was "plain" or "obvious"; (3) the error affected his substantial rights; and (4) the error seriously affected that fairness, integrity, or public reputation of judicial proceedings. *United States v. Edgar*, 348 F.3d 867, 871 (10th Cir.2003). If all four prongs are satisfied, we "may then exercise our discretion to notice the forfeited error." *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1250 (10th Cir.2004) (alterations omitted).

### 2. Merits

■ Here, we need only consider the "dispositive fourth prong—whether the alleged verdict form error affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* Mr. Ray has not argued that the alleged errors affected the fairness, integrity, or reputation of judicial proceedings, as is his burden. *See United States v. Vonn*, 535 U.S. 55, 63, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) ("[B]ecause relief on plain-error review is in the discretion of the reviewing court, a defendant has the further burden to persuade the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings.") (internal quotations and alterations omitted). Moreover, our independent review convinces us that he cannot meet that standard.

We have held that a defendant cannot satisfy the fourth prong of plain error review if there is "overwhelming and essentially uncontroverted" evidence of his guilt as to the charged crime or a closely related crime on which evidence was presented. *Gonzalez Edeza*, 359 F.3d at 1251. Reviewing the record on appeal, we find overwhelming and essentially uncontroverted evidence of Mr. Ray's significant involvement in a drug conspiracy. Specifically, many witnesses testified that Mr. Ray: (1) accompanied Jennifer Natale, one of the conspiracy's key drug couriers, on several drug transport trips; (2) assisted in packaging drugs for shipment; and (3) received shipments of cocaine as they arrived in Tulsa. Thus, finding that Mr. Ray has not satisfied the plain error standard, we affirm the ruling of the District Court.

### B. Severance

#### 1. Standard of Review

■ Mr. Ray next argues that the District Court erred in refusing to sever his

---

4. In *Lefkowitz*, the government prosecuted three codefendants for receiving stolen merchandise in violation of 18 U.S.C. § 659. *United States v. Lefkowitz*, 284 F.2d 310 (2d Cir.1960). At the government's request, the court instructed the jury that it could infer guilt based on the defendants' possession of stolen property. *Id.* at 312–13. Only two of the three codefendants objected to this instruction. *Id.* at 313. Without citing controlling authority and without addressing whether the government raised the matter, the court stated in a footnote, "We do not regard the failure of [defendant's] counsel to except as barring [him] from seeking reversal for error in the charge; [codefendant's] exception called the matter to the judge's attention and further exception would have been fruitless." *Id.* at 313 n. 1.

trial from those of his alleged coconspirators because the government sought at trial to introduce "highly prejudicial and inflammatory evidence arising from events that were wholly unrelated to" himself. In *United States v. Evans*, 970 F.2d 663, 676 (10th Cir.1992) (internal citations and quotations omitted) (emphasis added), we held that:

> The decision whether to grant a severance is within the sound discretion of the trial court. We will not disturb the trial court's decision absent an affirmative *showing of abuse of discretion and a strong showing of prejudice.* To establish abuse of discretion more is required than that separate trials might have offered a better chance for acquittal of one or more of the accused.

Furthermore, Mr. Ray must overcome the presumption that "in a conspiracy trial it is preferred that persons charged together be tried together." *United States v. Scott*, 37 F.3d 1564, 1579 (10th Cir.1994), *cert. denied*, 513 U.S. 1100, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995).

### 2. *Merits*

 Mr. Ray points to the following evidence as a basis for severance: (1) Mr. Mack's "gruesome murder of two individuals that had previously stolen drugs from Mack"; (2) the torture of Jennifer Natale; and (3) other incidents of violence and intimidation relating to drug deals. This evidence does not establish that the District Court committed reversible error in refusing to sever Mr. Ray's trial from his codefendants.

 Even if Mr. Ray could show that the District Court abused its discretion in denying his motion to sever, he cannot make "a strong showing of prejudice." *Evans*, 970 F.2d at 676. "Prejudice occurs when there is a serious risk that a joint trial will compromise a specific trial right

of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Edwards*, 69 F.3d 419, 434 (10th Cir. 1995) (internal quotations omitted). Mr. Ray provides no evidence indicating that the joint trial harmed one of his specific trial rights. Moreover, the government introduced significant evidence of Mr. Ray's guilt at trial such as his involvement in packaging, shipping, and receiving drugs. In light of this evidence, Mr. Ray has failed to make "a strong showing of prejudice," and we affirm the decision of the District Court.

### C. *Summary Witness Testimony*

#### 1. *Standard of Review*

 Mr. Ray next argues that the District Court erred in allowing Officer Adair to present testimony and exhibits summarizing portions of previous trial testimony. "We review a district court's evidentiary rulings for abuse of discretion." *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir.2003). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Mitchell*, 113 F.3d 1528, 1531 (10th Cir. 1997). Even if we find that the District Court erred, we must also determine whether the error "affect[ed] substantial rights," i.e., whether it is "harmless error." Fed.R.Crim.P. 52(a).

#### 2. *Merits*

 The government presented the testimony of Officer Adair, and accompanying exhibits, at the close of its case-in-chief. Officer Adair's evidence provided the jury with a summary of the previous testimony presented at trial. Mr. Ray dis-

counts the admissibility of Officer Adair's evidence under Fed.R.Evid. 702, 1006, and 611(a), arguing that the summary testimony and exhibits were "prejudicial" and "a significant factor in the jury's deliberations." We have not previously examined the admissibility of summary testimony and exhibits in a drug conspiracy case.

In complex tax cases, we have allowed the government to admit summary testimony so long as the district court gives appropriate limiting instructions. *See, e.g., United States v. Mann,* 884 F.2d 532, 538–39 (10th Cir.1989). This rule does not mandate automatic application to drug conspiracy cases, however, because tax cases often require the presentation of substantial and complex documentation and the technical analyses of these materials by tax experts. *See id.; United States v. Harenberg,* 732 F.2d 1507, 1513 (10th Cir.1984). As such, summary evidence in tax cases is often admissible pursuant to Fed.R.Evid. 1006, allowing the use of summaries for "voluminous" documents, or Fed.R.Evid. 702, permitting the use of materials providing the foundation for expert conclusions.

Here, we find that neither of these rules permit the use of summary exhibits and testimony. Although Fed.R.Evid. 703 allows an expert witness to base his conclusions on previous testimony, it "does not afford the expert unlimited license to testify or present a chart in a manner that simply summarizes the testimony of others without first relating that testimony to some 'specialized knowledge' on the expert's part as required under Rule 702." *United States v. Johnson,* 54 F.3d 1150, 1157 (4th Cir.1995). Officer Adair did not rely upon specialized knowledge in providing his testimony. Rule 1006 is also inapplicable because the summarizing exhibits rely largely on previous *testimony* not on "the contents of voluminous writings, recordings, or photographs" as required by the rule. *See* Fed.R.Evid. 1006; *Johnson,* 54 F.3d at 1158.

Nevertheless, other circuits allow summary witnesses and charts in complex drug conspiracy cases. These courts rely upon Fed.R.Evid. 611(a), as it grants district courts the power to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... make the interrogation and presentation effective for the ascertainment of the truth." Fed.R.Evid. 611(a); *see also Johnson,* 54 F.3d at 1158; *United States v. Baker,* 10 F.3d 1374, 1412–13 (9th Cir.1993), *rev'd on other grounds, United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000); *United States v. Pinto,* 850 F.2d 927, 935–36 (2d Cir.1988), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143, and 488 U.S. 932, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988); *see also* 6 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* ¶ 1006.08 (2d ed.2004).[5]

We adopt the approach taken by the Fourth Circuit in *United States v. Johnson,* 54 F.3d 1150, 1157 (4th Cir.1995). In analyzing summary testimony and exhibits, the *Johnson* court considered two factors. First, the court looked to "whether the summary chart [or testimony] aids the jury in ascertaining the truth." *Johnson,* 54 F.3d at 1159. Under this prong, the court considered items such as "the length

---

**5.** Portions of the record indicate that Mr. Ray's trial counsel objected to the testimony and exhibits, in part, because he argued that Officer Adair had incorporated into them information gleaned from non-trial sources. Indeed, at points, Officer Adair's own testimony seems to admit as much. Because Mr. Ray does not reassert those arguments on appeal, however, we do not reach them today. Nonetheless, we stress that our holding here is limited to those summaries that include already-admitted evidence.

of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate for the jury." *Id.* Second, the court considered the possible prejudice that may result to the defendant in allowing such evidence, looking specifically to whether the preparer of the chart was available for cross-examination and whether the district court gave appropriate limiting instructions. *Id.*

Applying this standard to Mr. Ray's appeal, we find that the District Court did not abuse its discretion in allowing both the charts and the summary testimony. First, as noted above, the trial lasted twenty-three days and involved over fifty witnesses testifying to a large number of complex and understandably confusing transactions. *See, e.g., Baker,* 10 F.3d at 1412 (permitting summary testimony and exhibits under Rule 611 only in exceptionally complex drug conspiracy cases). As such, we have no doubt that the summary testimony and charts "aid[ed] the jury in ascertaining the truth." *Johnson,* 54 F.3d at 1159. Second, although we recognize Mr. Ray's legitimate concerns regarding the prejudicial value of such testimony and exhibits,[6] we note that Mr. Ray's counsel had sufficient opportunity to challenge the veracity of the charts and testimony through cross examination and objection[7] and that the District Court explicitly instructed the jury on the proper use of the testimony and charts.[8] Although it may have been preferable for the District

---

6. In approving the use of summary testimony and charts in this case, we echo the cautionary statements of the *Johnson* court:

 We stress that in the ordinary federal drug prosecution, neither a summary witness's testimony nor a summary chart of the sort discussed here would be admissible pursuant to Rule[ ] 611(a). In such cases, the use of summaries—be it through narrative or charts—is best saved for the prosecutor's closing argument. The dangers inherent in using a summary witness in a federal criminal prosecution to support the government's case-in-chief are plain.... However, due to the large number of witnesses and extensive evidence, as well as the curative instructions offered by the district court, we conclude that the district court acted within its discretion in admitting the summary testimony and summary chart in this matter. *Id.* at 1162.

7. Indeed, in addition to the challenges to the testimony and charts advanced by Mr. Ray's codefendants, Mr. Ray's trial counsel questioned whether Officer Adair had prepared the charts while suffering from a lack of sleep and challenged the veracity of the drug amount calculations.

8. Specifically, the District Court instructed:

 Ladies and gentlemen, ... Sergeant Adair will be testifying as a summary witness.

 In certain cases in which the testimony has been long and there has been a multiplicity of matters that have been testified to, it is appropriate in some instances that a witness may attempt to summarize certain amounts of the evidence.

 You must be advised and know that Sergeant Adair's summary is not binding upon you in any way. For instance, if Sergeant Adair talks of amounts of marijuana or amounts of cocaine or so forth, to pull together or attempt to pull together total amounts and so forth, if he tries to attribute them to somebody, then it is not evidence that that is a fact or is true. It's the evidence you have heard through these three weeks that you must determine whether it is or is not attributable to a certain one or to the conspiracy as a whole, and I simply warn you that this is nothing more than a summary of evidence by the witness. It is not to be taken as truthful as to what that evidence is because that is something you must determine, and you will be more clearly instructed on it at a later date.

 Following Officer Adair's testimony, the District Court again repeated similar instructions. Although it would have been better for the District Court to have repeated these same instructions in writing at the trial's conclusion, in light of the clarity of the above instruction, we do not find it fatal that he did not.

Court to grant Mr. Ray's counsel a recess to review the charts in-depth, we note that Mr. Ray's counsel never requested such a recess. Thus, we affirm the District Court's decision to admit the summary testimony and charts in this particularly complex drug-conspiracy case.

### D. Sentencing Issues

#### 1. Standard of Review

■ Mr. Ray next presents two arguments challenging the sentencing enhancements employed by the District Court. On appeals of sentencing enhancements, we review the sentencing court's factual findings "for clear error and its legal conclusions de novo." *United States v. Shumway*, 112 F.3d 1413, 1426 (10th Cir.1997). When reviewing for clear error, we "will not reverse a lower court's finding of fact simply because we would have decided the case differently. Rather, [we] ... ask whether, on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (citations and internal quotations omitted).

#### 2. Merits

■ Mr. Ray first asserts that the District Court erred in enhancing his sentence under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm during a drug crime. His contention is meritless.

■ Section 2D1.1(b)(1) requires a district court to increase a defendant's sentence if "a dangerous weapon ... was possessed." U.S.S.G. § 2D1.1(b)(1). Courts must apply the enhancement "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3. "The government bears the initial burden of proving possession by

a preponderance of the evidence[.]" *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir.1997). If the Government carries its burden, the enhancement is "appropriate unless the defendant proves the exception—that it is clearly improbable the weapon was connected with the offense." *United States v. Topete–Plascencia*, 351 F.3d 454, 458 (10th Cir.2003) (quotations omitted).

■ Here, police found a gun and drugs during a search of Mr. Ray's home. Earlier, Mr. Ray had sold drugs to an undercover agent from his home. As such, the government has undoubtedly satisfied its burden. The District Court found to be not credible Mr. Ray's evidence attempting to show that it was clearly improbable that the gun was connected to the drug crime. "Witness credibility at sentencing is a question for the district court, and we find no reason to second-guess the court's credibility assessments in this case." *United States v. Browning*, 61 F.3d 752, 754–55 (10th Cir.1995) (citation and footnote omitted). As such, the District Court's finding was not clearly erroneous. *See Easley*, 532 U.S. at 242, 121 S.Ct. 1452. Thus, we affirm the District Court's two-level enhancement under § 2D1.1(b)(1).

■ Next, Mr. Ray argues that the District Court erred in enhancing his sentence under U.S.S.G. § 3B1.1(b) for acting as a manager or supervisor in the alleged conspiracy. Specifically, he argues that "the evidence reveals that [Mr. Ray] worked independently of the other Defendants" and "demonstrates that [Mr.] Ray, at most, competed with [Mr.] Bellamy concerning drug activities." We disagree.

■ "Section 3B1.1(b) provides a three level increase in the base offense level if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more

participants." *United States v. Green,* 175 F.3d 822, 833 (10th Cir.1999) (internal quotations omitted). "A supervisor is one who exercised some degree of control over [an]other involved in the commission of the offense or … [was] responsible for organizing others for the purpose of carrying out the crime." *United States v. Allemand,* 34 F.3d 923, 931 (10th Cir.1994) (internal quotations omitted). In determining whether this section applies to Mr. Ray, we consider:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, Application Note 4.

To qualify for the enhancement, Mr. Ray need manage or supervise only one participant. *United States v. Cruz Camacho,* 137 F.3d 1220, 1224 (10th Cir.1998).

In enhancing Mr. Ray's sentence under § 3B1.1(b)(1), the District Court found that Mr. Ray "did exercise decision-making authority within the organization," pointing to his direction and supervision of drug couriers and his oversight of drug packaging for shipment. Sufficient evidence exists in the record on appeal to support the District Court's decision on clear error review. As such, we affirm the § 3B1.1(b)(1) enhancement.

### III. Conclusion

For the reasons stated above, we AFFIRM the District Court on all claims.